

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

April 21, 2017

The Honorable Jane Nelson
Chair, Committee on Finance
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0143

Re: Whether the deposit of net sales tax revenue into the state highway fund as required under article VIII, subsection 7-c(a) of the Texas Constitution may be made after the close of the fiscal year when deposit before the close of the fiscal year is not possible (RQ-0157-KP)

Dear Senator Nelson:

You request an opinion concerning the timing of a deposit to the credit of the state highway fund under article VIII, subsection 7-c(a) of the Texas Constitution.[1] Your question involves two conflicting words in the same constitutional provision: "net" and "fiscal." The provision requires a deposit of net revenue in the current fiscal year. The Comptroller explains the net calculation necessarily occurs after the close of the fiscal year; thus the deposit of net revenue can only occur early into the next fiscal year. The resulting legal question presented is: What happens when a constitutional provision conflicts with itself and is impossible to comply with? Texas courts have consistently held that in such an event, substantial compliance will suffice. Under the facts presented, substantial compliance is making the deposit early in the next fiscal year once the net calculation is complete.

## I.     Background

The constitutional provision at issue provides:

> Subject to Subsections (d) and (e) of this section, in each state fiscal year, the comptroller of public accounts shall deposit to the credit of the state highway fund $2.5 billion of the *net* revenue derived from the imposition of the state sales and use tax on the sale, storage, use, or other consumption in this state of taxable items under Chapter

---

[1]Letter from Honorable Jane Nelson, Chair, Senate Fin. Comm. at 1 (Apr. 12, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

151, Tax Code, or its successor, that exceeds the first $28 billion of
that revenue coming into the treasury in that state fiscal year.

TEX. CONST. art. VIII, § 7-c(a) (emphasis added).[2] You specifically ask whether, for the 2018–2019 biennium, a delay in making each fiscal year deposit to the state highway fund until September of the following fiscal year would violate this constitutional provision.[3] Request Letter at 1. You explain that the Comptroller of Public Accounts ("Comptroller") informed you "that it is not possible to calculate net revenue and remit the appropriate payment to the highway fund until after the close of the fiscal year." *Id.* Based on that information, you ask whether the Comptroller can comply with article VIII, subsection 7-c(a) by making the deposit required under that subsection in the next fiscal year as soon as the net revenue can be calculated. *Id.*

Article VIII, subsection 7-c(a) requires the Comptroller to deposit up to $2.5 billion into the state highway fund if the net revenue derived from the sales and use tax imposed under chapter 151 of the Tax Code exceeds $28 billion. TEX. CONST. art. VIII, § 7-c(a). The specific amount of the deposit will depend on the amount of net revenue coming into the treasury pursuant to chapter 151. *Id.* If net revenue reaches $30.5 billion, the Comptroller must deposit the entire $2.5 billion allocated to the state highway fund under that provision. However, if net revenue derived under chapter 151 falls between $28 billion and $30.5 billion, the specific amount deposited into the state highway fund will depend upon the final net revenue amount. Until the Comptroller calculates that amount, the Comptroller may not be able to determine whether and to what extent funds are available for the transfer to the state highway fund as required under article VIII, subsection 7-c(a). However, the plain language of the provision provides that the deposit shall be made in each state fiscal year based upon the net revenue coming into the treasury "*in that state fiscal year.*" *Id.* (emphasis added). Thus, the express language of the provision requires the Comptroller to make the deposit during the fiscal year in which the revenue comes into the treasury, and a delay until September of the next fiscal year appears inconsistent with the "in that state fiscal year" portion of the provision.

## II.     Standard of Review

Attorney General opinions do not find facts or resolve issues of fact. Tex. Att'y Gen. Op. No. GA-0513 (2007) at 3 n.4. As a result, when responding to opinion requests, we provide advice concerning the legal issues presented and assume the facts as presented to us are true. Tex. Att'y Gen. Op. No. JC-0240 (2000) at 1. When answering legal questions, our role is to assess how a court would likely rule, given the facts produced by the requestor, the text at issue, and prior cases. Tex. Att'y Gen. Op. No. GA-1003 (2013) at 1.

---

[2]Subsection (d) concerns reductions in the amount of the deposit by joint resolution, and subsection (e) establishes an expiration date for the Comptroller's duty under subsection (a). TEX. CONST. art. VIII, § 7-c(d), (e). Neither subsection relates to the specific question you ask. The Legislature passed article VIII, section 7-c in 2015, and it was adopted by the voters in November 2015. Subsection 7-c(a) takes effect on September 1, 2017. *See* Tex. S.J. Res. 5, 84th Leg., R.S., 2015 Tex. Gen. Laws 5414, 5415. To date, no court has construed its provisions.

[3]*See* TEX. GOV'T CODE § 316.071 (providing that "[t]he state fiscal year ends on August 31 of each year").

## III.     Analysis

### A.     "Net" Means Net

You tell us that the Comptroller informs you "that it is not possible to calculate *net* revenue and remit the appropriate payment to the highway fund until after the close of the fiscal year." Request Letter at 1 (emphasis added). The constitution does not define "net revenue" for purposes of article VIII, subsection 7-c(a). When a term is not defined, we apply the common, ordinary meaning of the term unless a contrary meaning is apparent from the language of the provision. *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d. 28 (Tex. 2017). To determine a term's common, ordinary meaning, we typically look first to the dictionary definitions and "then consider the term's usage in other statutes, court decisions, and similar authorities." *Id.* We construe constitutional provisions and amendments that relate to the same subject matter together and consider them in light of each other. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016) (explaining that courts interpret words in the constitution as they are generally understood).

Other constitutional references to "net revenue" similarly include in that term only the amount remaining after payments of all refunds allowed by law and expenses of collection. *See, e.g.*, TEX. CONST. art. VIII, §§ 7-a, 24(f); *id.* art. III, § 49-g(o) (defining "net" to mean "the amount of money that is equal to the difference between gross collections and refunds before the comptroller allocates the receipts as provided by law"). "Net" is defined as a "final or overall" amount. NEW OXFORD AMERICAN DICTIONARY 1178 (3d ed. 2010). The common, ordinary understanding of "net" revenue includes only the amount of revenue "remaining after all deductions have been made." AMERICAN COLLEGE DICTIONARY 934 (4th ed. 2002); *see also* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 832 (11th ed. 2004) (defining "net" as the amount "remaining after the deduction of all charges, outlay, or loss"). Thus, a fiscal year's actual "net revenue derived from the imposition of the state sales and use tax . . . under Chapter 151, Tax Code" includes only the final amount remaining at the end of a fiscal year after the Comptroller pays deductions, refunds, and any other expenses required by law. *See* TEX. CONST. art. VIII, § 7-c(a).

Answering your question requires consideration of the timing involved in the Comptroller's calculation of net revenue. Under chapter 151, the State imposes a sales and use tax, and certain political subdivisions may impose additional sales and use taxes under other chapters of the Tax Code. *See* TEX. TAX CODE §§ 151.051(a) ("A tax is imposed on each sale of a taxable item in this state."), (b) ("The sales tax rate is 6 1/4 percent of the sales price of the taxable item sold."), .101 (imposing a use tax at the same percentage rate); *see also id.* §§ 321.101(a) (authorizing a municipality to adopt a sales and use tax), 323.101 (authorizing certain counties to adopt a sales and use tax). A retailer collects both the State and local sales and use taxes due from the purchaser. *Id.* §§ 151.103(a), 321.201 (requiring retailer to add sales tax imposed by the municipality to that imposed by chapter 151). Upon receipt of sales and use tax revenue from a retailer, however, the Comptroller must calculate the portion that constitutes local sales and use taxes and send that amount to the appropriate political subdivisions. *See, e.g., id.* §§ 321.501–.505 (requiring Comptroller to distribute municipal sales and use taxes to the taxing municipality). Because local sales and use taxes do not constitute revenue derived from the tax

imposed under chapter 151, the Comptroller is unable to calculate the net revenue as required under article VIII, subsection 7-c(a) until after determining the amount of local sales and use taxes to distribute to local governments pursuant to the Tax Code. In addition, chapter 151 authorizes the Comptroller to issue various refunds on sales and use taxes imposed under that chapter. *See, e.g., id.* §§ 151.429(a), (c) (authorizing a tax refund of up to $250,000 for an enterprise project), .4291(a), (c) (authorizing a tax refund of up to $250,000 for a defense readjustment project). Due to these provisions, the possibility of alterations to the net revenue calculation may continue through the end of the fiscal year. Furthermore, the Comptroller explains that for the 2018 and 2019 fiscal years, "projections suggest that the sales tax revenue will not reach the $30.5 billion threshold until the last month of the fiscal year."[4]  Thus, the Comptroller is currently unable to compute the final "net revenue fiscal year end calculations" and confirm the appropriate amount of the deposit to the state highway fund before the end of the fiscal year.

When a strictly literal construction of a provision would make compliance with it impossible, courts will adopt a construction requiring substantial compliance, which will promote the purposes for which the legislation was passed. *Bizelle v. State*, 116 S.W.2d 385, 386 (Tex. Crim. App. 1938). *See also Bryant v. State*, 457 S.W.2d 72, 77 (Tex. App.—Eastland 1970, writ ref'd n.r.e.) (substantial compliance with article III, section 35 of the Texas Constitution is sufficient); *Whiteside v. Brown*, 214 S.W.2d 844, 847 (Tex. Civ. App.—Austin 1948, writ dism'd) (concluding that substantial compliance with article XVII, section 1 of the Texas Constitution, relating to notices of elections, satisfied the constitutional demand). Relatedly, the Texas Supreme Court has admonished "that a too literal construction of a statute, which would prevent the enforcement of it according to its true intent, should be avoided." *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996).

### B.  What Would Be Substantial Compliance?

If the Comptroller cannot calculate and make the deposit in the same fiscal year, what act would amount to substantial compliance? "Substantial compliance means one has performed the essential requirements" of a provision of law. *Mekhail v. Duncan-Jackson Mortuary, Inc.*, 369 S.W.3d 482, 485 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The two elements to the provision at issue are money (the calculated net revenue deposit) and time (deposited the same fiscal year). The Comptroller's letter, your request, and other briefing suggest the amount of money is more essential—such that the net revenue deposit should occur as soon as possible in the next fiscal year.[5]  Other briefing suggests timing is more essential—such that the Comptroller should deposit an estimated payment at the end of the fiscal year based on his January 9, 2017 biennial revenue estimate with a reconciliation to follow once

---

[4]*See* Letter from Honorable Glenn Hegar, Comptroller of Pub. Accounts, to Honorable Jane Nelson, Chair, Senate Fin. Comm. (Apr. 12, 2017) ("Comptroller Letter") (attached to Request Letter).

[5]Request Letter at 1–2, Comptroller Letter at 1–2, Brief from Honorable Dan Patrick, Lieutenant Governor, to Honorable Ken Paxton, Tex. Att'y Gen. at 2–4 (Apr. 18, 2017) (on file with the Op. Comm.).

the final calculation occurs.[6]  A review of the text of the constitutional provision at issue and relevant case law reveals that money is more essential to that constitutional provision than time.

The Texas Supreme Court imparted guidance regarding "[p]rovisions which are not of the essence of the thing to be done." *Chisholm v. Bewley Mills*, 287 S.W.2d 943, 945 (1956). Specifically, the Court advised that, in language commanding an act to be done within a set time, "the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified" supports a construction that the time to complete the act is less essential than the act itself. *Id.* Nothing in the constitutional provision prevents the deposit from occurring as soon as possible in the next fiscal year or spells out consequences for such a delay in the deposit. TEX. CONST. art. VIII, § 7-c(a).  By contrast, there is no language in this provision contemplating a deposit based on estimated revenue.  Estimates are based on projected revenue and may not reflect the actual net revenue derived from the imposition of the state sales and use tax under chapter 151.  The Legislature knows how to word a provision to require the Comptroller to make a payment based on estimated revenue because it has done so elsewhere. *See, e.g.*, TEX. TAX CODE § 351.1015(h) (authorizing the Comptroller to estimate hotel-associated revenue and make deposits into municipal suspense accounts "based on the estimate").  In contrast, article VIII, section 7-c(a) includes no discussion of estimates and instead requires that the deposit into the state highway fund be calculated based on net revenue.  Moreover, to the extent that the Comptroller deposited more into the state highway fund than required by article VIII, section 7-c(a), the Comptroller could not independently reconcile that overpayment in the absence of an express grant of authority due to the constitutional requirement that no money "be drawn from the Treasury but in pursuance of specific appropriations made by law." TEX. CONST. art. VIII, § 6.[7] Thus, the Legislature knew how to require the Comptroller to calculate a deposit based on an estimate and allow a reconciliation of that estimate, but it did not include similar language in article VIII, section 7-c(a).[8]  Accordingly, paying an estimate, with no mechanism to return an overpayment, would not be a viable method of substantially complying with the constitutional provision at issue.

The other potential method of substantial compliance would be to make the actual net revenue payment in September to allow for the calculation of the amount.  In proposing article VIII, section 7-c, the Legislature intended to provide the Texas Department of Transportation with

---

[6]*See* Brief from Frank Battle, Special Counsel to Honorable Joe Straus, Speaker of the Tex. House of Representatives at 5 (Apr. 18, 2017) ("Speaker Brief") (on file with the Op. Comm.).

[7]*See* Tex. Att'y Gen. Op. No. O-0044 (1939) at 3 (explaining that pursuant to article VIII, section 6 of the Texas Constitution, the Comptroller may not withdraw money from the treasury to "rectify a previous bookkeeping error, or for any other reason, except upon specific direction by the Legislature").  This principle is true whether the fund to withdraw money from is constitutionally dedicated (as here) or merely statutory. *See* Tex. Att'y Gen. Op. No. O-2658 (1940) (concluding that the Comptroller lacks authority to make a refund on an overpayment of inheritance taxes absent a legislative appropriation).

[8]*See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners, Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004) (observing that the "Legislature clearly knew how to indicate that warranty claims were assignable, but did not do so in the DTPA").

"a revenue stream that allows for future planning" to address the State's growing infrastructure needs. Senate Research Ctr., Bill Analysis, Tex. S.J. Res. 5, 84th Leg., R.S. (2015). A court would likely conclude that the Comptroller would satisfy these essential requirements (thereby substantially complying with the constitution) by making the required deposit in September of the following fiscal year, when the net revenue calculation could be confirmed.[9] Thus, if the Comptroller is unable to calculate the exact amount of the deposit to the state highway fund before the end of the fiscal year, doing so as soon as possible thereafter would result in substantial compliance with the constitutional provision.[10]

---

[9]It has been suggested that the Legislature may not authorize the Comptroller to exercise discretion in determining the timing of the deposit. Speaker Brief at 6. We agree that the constitutional duties imposed by article VIII, section 7-c(a) belong to the Comptroller and that the Legislature could not revise those duties absent a constitutional amendment. However, if the Comptroller is unable to comply with the conflicting literal requirements of the provision, the Comptroller's substantial compliance will promote the purposes for which the legislation was passed.

[10]Article III, section 49a(b) of the Texas Constitution requires the Comptroller to certify "that the amount appropriated is within the amount estimated to be available in the affected funds." TEX. CONST. art. III, § 49a(b). Briefing submitted to this office questions whether the Comptroller's inability to make the deposit in a fiscal year would increase the amount of general revenue available for certification under article III, section 49a(b). Speaker Brief at 6. Because the Eighty-Fifth Legislature has yet to pass a General Appropriations Act, and the language regarding appropriations remains tentative, we are unable to determine whether the amount appropriated is within the amount estimated to be available pursuant to article III, section 49a(b). See Hearings on Tex. S.B. 1 Before the Senate Comm. on Finance, 85th Leg., R.S. (Mar. 22, 2017), available at www.senate.texas.gov/av-archive.php. However, we note that in previous sessions, the Legislature has passed legislation deferring payment of dedicated funds from the end of one fiscal year to the beginning of the next fiscal year. See Act of June 28, 2011, 82d Leg., 1st C.S., ch. 4, sec. 1.01, 2011 Tex. Gen. Laws 5254, 5254–55 (amending section 42.259 of the Education Code to defer 15% of the payments from the foundation school fund to certain school districts from August 25th to between September 5th and 10th); Act of June 1, 2003, 78th Leg., R.S., ch. 201, sec. 35, 2003 Tex. Gen. Laws 812, 822–23 (same).

### S U M M A R Y

    Article VIII, subsection 7-c(a) of the Texas Constitution requires the Comptroller to deposit into the state highway fund up to $2.5 billion of the net revenue derived from the imposition of the state sales and use tax under Chapter 151, Tax Code. If the Comptroller is unable to calculate the specific amount of the required deposit before the end of the fiscal year, a court would likely conclude that doing so as soon as possible thereafter would result in acceptable, substantial compliance with the constitutional provision.

    Very truly yours,

KEN PAXTON
Attorney General of Texas


JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee